IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>MACK EDWARD HARRIS,<br><br>Defendant/Movant. | Cause No. CR 13-098-BLG-SPW<br>CV 19-105-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION<br>and GRANTING CERTIFICATE<br>OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Mack Edward

Harris's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C.

§ 2255. Harris is a federal prisoner proceeding pro se.

Represented by appointed counsel, Harris filed an amended motion on June

29, 2020. The United States has filed an answer and Harris a reply.

## I. Background

On October 18, 2013, a grand jury indicted Harris on one count of

possessing a firearm after having been convicted of a felony (Count 1, citing 18

U.S.C. § 922(g)(1)) and one count of possessing a firearm after being convicted of a misdemeanor crime of domestic violence (Count 2, citing 18 U.S.C. § 922(g)(9)). Both counts were based on the same weapon, a Hi Point 9-mm pistol. *See* Indictment (Doc. 1) at 2.

Trial commenced on March 2, 2015. The jury found Harris guilty on both counts. *See* Minutes (Docs. 72, 75); Verdict (Docs. 77, 88).

At sentencing, the Court found a total offense level of 22. His criminal history category was VI. The advisory guideline range was 84 to 105 months. Harris was sentenced to serve 84 months in prison, to be followed by a three-year term of supervised release. *See* Judgment (Doc. 109) at 2–3; Statement of Reasons (Doc. 110) at 1 §§ I(B)(3), III.

Harris appealed the denial of his pretrial motion to suppress. On March 8, 2017, the Court of Appeals affirmed. *See* Mem. (Doc. 131). On October 2, 2017, the United States Supreme Court denied Harris's petition for writ of *certiorari*. *See* Clerk Letter (Doc. 137). Harris's conviction became final on that day. *See* *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Harris filed his original, *pro se* § 2255 motion on September 30, 2019.[1] *See*

---

[1] Harris's motion is not "second and subsequent." Reply (Doc. 174) at 1. It is his first application for relief under § 2255. *See, e.g.*, *Woods v. Carey*, 525 F.3d 886, 889–90 (stating that, although Congress did not define what constitutes a second or successive petition, "it is clear that for a petition to be 'second or successive' . . . it must at a minimum be filed subsequent to the conclusion" of a proceeding in which a final disposition has been reached) (citing *Ching v.*

Mot. § 2255 (Doc. 142) at 13; *Houston v. Lack*, 487 U.S. 266, 276 (1988).  The amended motion supersedes the original motion.  *See* Order (Doc. 145) at 2 ¶ 3.

## II. Harris's Claims

Harris asserts, first, that the criminal judgment is invalid because the jury was not instructed on an essential element of each offense charged against him.  In *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019), the United States Supreme Court held that a defendant is guilty of violating 18 U.S.C. § 922(g) only if he "knows of his status as a person barred from possessing a firearm" at the time he possessed it.  In other words, the United States should have been required to prove, beyond reasonable doubt, that Harris knew, on March 12, 2013, that he had been convicted of a crime that could be punished by more than a year in prison and of a misdemeanor crime of domestic violence, *see* 18 U.S.C. § 922(g)(1), (9).

Second, Harris contends that he could not be sentenced for two counts of violating § 922(g) based on his possession of one firearm on one occasion.  *See United States v. Mavromatis*, 769 F.3d 1194, 1195 (9th Cir. 2014).

## III. Analysis

### A. Claim One

Disposition of Harris's first claim is governed by *Bousley v. United States*, 523 U.S. 614 (1998).

---

*United States*, 298 F.3d 174, 177 (2d Cir. 2002)).

### 1. *Rehaif* Applies to Harris

#### (a) Harris Can Seek Relief Under *Rehaif*

In *Bousley*, the Court frankly admitted that the defendant's guilty plea was constitutionally invalid if "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." *Id.* at 618–19. And no one did correctly understand them. Bousley pled guilty in 1990 to "using" a firearm during and in relation to a drug trafficking crime, *see id.* at 616, and the Supreme Court did not clarify that "use" meant "active employment," such as "brandishing, displaying, bartering, striking with . . . [or] firing or attempting to fire," until 1995, *id.* at 617 (quoting *Bailey v. United States*, 516 U.S. 137, 144, 148 (1995)). Although Bousley's conviction was final long before the Court decided *Bailey*, the Court said "it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid." *Bousley*, 523 U.S. at 621.

*Rehaif* is to Harris as *Bailey* was to Bousley. *Rehaif* is certainly a new rule. As explained further below in Part 3(a), it was hardly "'apparent to all reasonable jurists'" when Harris's conviction became final. *See Edwards v. Vannoy*, __ U.S. __, 141 S. Ct. 1574, 1555 (2021) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 528 (1997)). Just as Bousley was entitled to rely on the new rule announced by

4

*Bailey*, Harris is entitled to rely on *Rehaif* in support of his claim that his conviction is constitutionally invalid because the United States did not fairly prove him guilty. *See* Jury Instrs. 16, 17 (Doc. 81 at 17, 18) (omitting element of Harris's knowledge of his status); *see also, e.g.*, *United States v. Avery*, 719 F.3d 1080, 1081 (9th Cir. 2013) (reversing district court's denial of § 2255 motion where petitioner was convicted of honest services fraud in 2008 and, after serving about four years in prison, sought relief under *Skilling v. United States*, 561 U.S. 358 (2010)).

### (b) *Rehaif* Need Not Be a New Constitutional Rule

Because Harris's claim is procedurally defaulted, the Court does not need to decide whether, as the United States argues, it is also time-barred. But the parties' briefs generate confusion on the issue, so the Court will explain why it is relying on procedural default rather than a time bar.

Harris argues that his claim is timely because *Rehaif* announced a new rule of constitutional law that is retroactive. *See* Harris Br. (Doc. 164) at 11; Reply (Doc. 174) at 8–9. The United States asserts that *Rehaif* did not announce a new rule of constitutional law, so Harris's motion is untimely. *See* U.S. Resp. at 7.

*Rehaif* did not announce a new rule of constitutional law. *See Tate v. United States*, 982 F.3d 1226, 1227–28 (9th Cir. 2020) (per curiam) (decided after briefing was complete); *see also* U.S. Resp. (Doc. 167) at 7 (citing cases). That fact does

5

not appear to be relevant to Harris's case.

The constitutional nature of a new rule or right is relevant to second or successive § 2255 motions, *see* §§ 2255(h)(2), 2244(b)(2)(A), (3)(C), and a constitutional issue must be implicated to justify issuance of a certificate of appealability, *see* § 2253(c)(2). *See, e.g.*, *United States v. Fierro*, No. 20-16058, 848 Fed. Appx. 337, 337–38 (9th Cir. May 21, 2021); *see also, e.g.*, *Garcia v. United States*, 923 F.3d 1242, 1244–46 (9th Cir. 2019) (denying application to file second or successive motion).

Unlike the limitations period prescribed for state prisoners in 28 U.S.C. § 2244(d)(1)(C), the terms of § 2255(f)(3) do not require a federal prisoner to demonstrate a newly recognized *constitutional* right to relief. They require only a right newly recognized by the Supreme Court and its "retroactive" application to persons whose convictions were final before the Supreme Court's decision. It appears that, under § 2255(f)(3), the new right could be either constitutional or statutory in origin.

Where new *constitutional* rules are concerned, "retroactivity" is an important and vexed issue. It determines whether final judgments, even those entered by state courts, may be reopened to take account of new federal law that the state courts had no duty to anticipate or apply in their proceedings. Consequently, the United States Supreme Court limits the retroactive application

6

of new constitutional rules. New substantive rules narrow the "range of conduct or the class of persons that the law [may] punish[]" and apply to all cases, pending or final. New procedural rules alter "the manner of determining the defendant's culpability" and apply only to pending cases. *See Edwards*, 141 S. Ct. at 1562; *see also Teague v. Lane*, 489 U.S. 288 (1989), *discussed in Bousley*, 523 U.S. at 619–21.

But the *Bousley* Court said that retroactivity doctrine "is inapplicable to the situation in which [the Supreme Court] decides the meaning of a criminal statute enacted by Congress." *Bousley*, 523 U.S. at 620. Supreme Court "decisions . . . holding that a substantive federal criminal statute does not reach certain conduct" mean that "the range of conduct" subjecting the defendant to punishment is narrower, so that even a conviction that is already final "necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *See id.* (internal quotation marks and citation omitted). Thus, these new decisions apply to all federal cases, pending or final, as demonstrated by the Court's application of *Bailey* in Bousley's case. *See id.* at 621; *see also, e.g., Avery*, 719 F.3d at 1081.

Having filed its brief before the Ninth Circuit decided *Tate*, the United States cites cases from other circuits holding that *Rehaif* did not announce a new constitutional rule that is retroactive. *See* U.S. Resp. (Doc. 167) at 7. However, it

7

incorrectly describes *United States v. Class*, 930 F.3d 460, 469 (D.C. Cir. 2019), as

holding that *Rehaif* is "not retroactive." *Class* actually says the same thing the

other cited cases say, viz., that *Rehaif* resolved an issue of statutory construction,

not constitutional law. *See Class*, 930 F.3d at 469–70. The other cases the United

States cites, *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019) (panel decision),

*In re Sampson*, 954 F.3d 159, 162 (3d Cir. 2020) (per curiam), and *Khamisi-El v.*

*United States*, 800 Fed. Appx. 344, 348–49 (6th Cir. 2020), all concern federal

prisoners seeking leave to file second or successive applications under 28 U.S.C. §

2255. A second or successive application must rely on a new rule of constitutional

law that the Supreme Court itself has both announced and made retroactive. *See*

28 U.S.C. § 2255(h)(2). None of the cited decisions say that *Rehaif* does not apply

to *any* convictions that were final before it was issued.

Thus, the United States' argument that Harris's motion is untimely because

*Rehaif* does not announce a new rule of constitutional law, *see* U.S. Resp. (Doc.

167) at 7, appears inapposite. At the same time, Harris is mistaken when he

suggests *Rehaif* is retroactive because it narrowed the range of conduct that

Congress *may* punish in § 922(g). *Rehaif* held that Congress *did not* punish

persons unaware of their status in § 922(g), not that it *could not* do so. *See, e.g.*,

*Rehaif*, 139 S. Ct. at 2197 (noting that the United States did not "convince us that

Congress sought to depart from the normal presumption in favor of scienter."); *see*

8

*also Class*, 930 F.3d at 469–70.

Harris is a federal prisoner questioning the validity of his conviction in view of a Supreme Court decision narrowing the scope of conduct prohibited by the underlying federal statute. The *Rehaif* Court "newly recognized" that the defendant's knowledge of his status is an element of § 922(g). *See, e.g., Rehaif,* 139 S. Ct. at 2200; *Greer v. United States,* __ U.S. __, 141 S. Ct. 2090, 2096–98 (2021). Subject to persuasion otherwise in a different case, where the issue must be decided, the Court believes that § 2255(f)(3) accommodates the longstanding principle, stated in *Bousley,* that a federal defendant may seek relief under a new Supreme Court decision clarifying the scope of a federal criminal statute, adding only the proviso that he must do so within one year of the decision. By contrast, a new procedural ruling, such as a decision interpreting the Speedy Trial Act, likely would not be retroactive.

Whether the defendant can meet the applicable criteria if his motion is a second or successive one is a separate question, as is his ability to overcome procedural default and his entitlement to relief on the merits.

## 2. Procedural Default

Although *Bousley* supports Harris's ability to invoke *Rehaif, Bousley* is not a case with a happy ending for most federal prisoners. It accepts that a conviction based on fewer than all elements is constitutionally invalid and also contemplates

9

that such a conviction might lack a remedy.

The doctrine of procedural default ensures that litigants present their claims to the right tribunal at the right time. Every defendant can choose to appeal issues that are presented on the record at the conclusion of the case in district court. All defendants must choose whether to appeal and, if so, which issues to present. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). These choices, though unavoidable, have consequences, because habeas review is "an extraordinary remedy," not merely a second appeal. *See, e.g.*, *Bousley*, 523 U.S. at 621 (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994), and *Sunal v. Large*, 332 U.S. 174, 178 (1947)). To prevent habeas from becoming a second appeal, a petitioner who could have raised a claim on direct appeal, but did not, cannot obtain a hearing on the merits of his claim unless he first excuses his failure to present the claim in the right court at the right time.

Harris's claim that the United States did not prove all the elements of the offense is the "type of claim [that] can be fully and completely addressed on direct review based on the record created" at trial. *Bousley*, 523 U.S. at 622. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either

10

'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* (quoting

*Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72,

87 (1977); *Smith v. Murray*, 477 U.S. 527, 537 (1986)) (internal quotation marks

omitted).

### 3. Excusing Default: Cause and Prejudice

#### (a) Cause

The Supreme Court holds that a defendant can show cause to excuse his

failure to raise a claim on direct appeal if the claim is "so novel that its legal basis

was not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984).  As

an example of novelty, the *Reed* Court said, "a decision may overturn a

longstanding and widespread practice to which th[e Supreme] Court has not

spoken, but which a near-unanimous body of lower court authority has expressly

approved." *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982))

(internal quotation marks and brackets omitted).  Thus, "availability" means

something like "potentially viable," even if highly unlikely or "unacceptable to [a]

particular court at [a] particular time." *Bousley*, 523 U.S. at 623.

Harris argues that a *Rehaif*-type claim was not "available" at the time of his

direct appeal in 2015 through 2017.  Before 2019, every federal appellate court that

had addressed the issue—ten out of twelve circuits—unanimously agreed that the

prosecution need *not* prove a defendant knew of his prohibited status under various

subsections of 18 U.S.C. § 922(g).  *See* Harris Br. (Doc. 163) at 18 (citing *Rehaif*,

139 S. Ct. at 2210 n.6 (Alito, J., dissenting)).  Harris contrasts the Court's decision

in *Bailey*, which resolved numerous conflicts among the circuits "in the standards

they have articulated . . . and in the results they have reached," *Bailey*, 516 U.S. at

142, with its literally unprecedented decision in *Rehaif*.

The United States argues that the legal basis of Harris's claim was

"available," because "[t]he scienter requirement of § 922(g) has been litigated for

years."  U.S. Resp. (Doc. 167) at 9 (citing cases collected in *United States v.*

*Butler*, 637 F.3d 519, 524 (5th Cir. 2011)).  That is true, but it cuts in Harris's

favor.  Every decision cited in *Butler*, as well as *Butler* itself, and all the cases that

came after it, rejected what we now call a *Rehaif* claim.  The Eleventh Circuit's

decision described "a longstanding uniform body of precedent holding that the

government does not have to satisfy a mens rea requirement with respect to the

status element of § 922." *Rehaif*, 888 F.3d 1138, 1144 (11th Cir. 2018).  The court

concluded, "Textual support, prior precedent, congressional acquiescence, and

analogous common law all support the conclusion that there is no mens rea

requirement with respect to the status element of § 922(g)."  *Id.* at 1147.  Even

state courts interpreting statutes similar to § 922(g) unanimously rejected the

*Rehaif* claim.  *See Rehaif*, 139 S. Ct. at 2209–11 (Alito, J., dissenting).

Some have argued, in effect, that the novelty of novel Supreme Court

12

decisions has worn a little thin in recent years. *See, e.g., Rehaif,* 139 S. Ct. at 2212–13 (Alito, J., dissenting). Perhaps revision of the very concept of novelty might be in order. But, as far as this Court can see, the long history, volume, and unanimity of precedent overturned by *Rehaif*—"thousands of cases for more than 30 years," *id.* at 2201—remains rare. It was not the case that the claim was "unacceptable to [a] particular court at [a] particular time." *Bousley,* 523 U.S. at 623. Nor was it the case that the issue was seldom litigated. The claim was presented frequently to federal appellate courts and even some state courts of last resort. Yet it had not been accepted by *any* of them since sometime before 1986, when Congress "consolidated an assortment of former firearm laws which, like [§ 922(g)], contained no *mens rea* element." *Butler,* 637 F.3d at 523.

By holding that there *is* a mens rea requirement with respect to the status element of § 922(g), *Rehaif* "overturn[ed] a longstanding and widespread" rule to which the Supreme Court had not previously spoken, "but which a [fully] unanimous body of lower court authority . . . expressly approved." *Reed,* 468 U.S. at 17. Harris shows cause to excuse his procedural default.

### (b) Prejudice

Showing cause is not enough. To obtain a new trial, Harris must also show that he would be prejudiced if the Court does not excuse his default and reach the merits of his claim.

13

Harris cannot meet the prejudice prong of the cause-and-prejudice test merely by showing that the United States did not prove the *Rehaif* element at trial. He "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original). In somewhat less dramatic language, he must show a reasonable probability that a properly instructed jury would acquit him. He need not show that acquittal is more likely than conviction, but he must show some realistic prospect that a new trial would produce a new result. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 434–36 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984); *see also Greer*, 141 S. Ct. at 2096–98 (on plain-error review, holding defendants failed to show *Rehaif* error affected substantial rights, i.e., a "reasonable probability" of acquittal).

Of course, *Greer* is too recent to have alerted Harris to the need to show prejudice. But *Frady* is not a novel decision. In addition, the United States argued that any *Rehaif* error was harmless. *See, e.g.*, U.S. Resp. (Doc. 167) at 12. Harris provides no reason to believe that he did not know of the facts that precluded his possession of a firearm. He is not required to submit evidence to support his motion, *see* Harris Br. (Doc. 163) at 33, but he does not even allege that he actually

14

did not know he had been convicted of a crime punishable by more than a year in prison or at least one "misdemeanor crime of domestic violence," 18 U.S.C. § 921(a)(33)(A). He alleges only that he would not have stipulated to his prior convictions. *See* Harris Br. at 17; Reply (Doc. 174) at 16. The record provides reason to believe Harris did know of his felony convictions, as he was sentenced to serve more than one year in prison for each. *See* Presentence Report ¶¶ 53, 55; *Rehaif*, 139 S. Ct. at 2209 (Alito, J., dissenting) ("Juries will rarely doubt that a defendant convicted of a felony will have forgotten that experience"); *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020) ("Convicted felons typically know they're convicted felons."). There is also reason to believe he knew of at least one misdemeanor domestic violence conviction, if only because there are so many candidates for that label. *See id.* ¶¶ 44, 46, 49, 50, 54, 56, 57, 60, 61, 64, 65, 66.

Harris would have no burden of proof at trial, but in *this* proceeding, he does have the burden of excusing his procedural default. He fails to carry it. He does not show sufficient prejudice to excuse his default under the cause-and-prejudice test.

### 4. Excusing Default: Actual Innocence

As Harris does not show prejudice, he cannot meet the significantly higher standard of showing that, more likely than not, any reasonable juror would have

reasonable doubt. *See House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1994).

### 5. Conclusion

Claim One is procedurally defaulted, and Harris fails to excuse his default. The claim is dismissed with prejudice.

### B. Claim Two

The parties agree that Harris should not have been sentenced on both Count 1 and Count 2. They disagree whether the remedy is a new sentencing hearing, as Harris urges, *see* Harris Reply (Doc. 174) at 2, or whether the Court should simply reimburse Harris the $100 special assessment, as the United States parenthetically suggests, *see* U.S. Resp. (Doc. 167) at 5 (citing Final Judgment and Order Denying Mot. to Vacate, Reducing Special Assessment (Doc. 17) at 4 ¶ 10 & n.7, *Saint-Cyr v. United States*, No. 16-61639-CIV-DIMITROULEAS (S. D. Fla. Nov. 17, 2016)).

Harris's claim relies on *United States v. Mavromatis*, 769 F.3d 1194 (9th Cir. 2014). There, the court adopted the United States' position that "§ 922(g) states a single offense that supports a single *conviction and* sentence rather than multiple offenses that may be charged separately." *Id*. at 1195 (emphasis added). *Saint-Cyr* invokes the "concurrent sentence doctrine." *See Saint-Cyr* Order at 4 ¶ 10. At least in the Ninth Circuit, and at least as to challenges to convictions, as

16

opposed to sentences alone, the doctrine was abolished long ago. *See United States v. DeBright*, 730 F.2d 1255, 1259–60 (9th Cir. 1984) (en banc); *United States v. Brooks*, 772 F.3d 1161, 1172 n.6 (9th Cir. 2014); *but see Kassir v. United States*, __ F.4th __, No. 19-1477, 2021 WL 2878508 (2d Cir. July 9, 2021) (applying concurrent sentence doctrine on collateral review).

Harris claims he could not be convicted on both counts. Am. Mot. § 2255 (Doc. 162) at 2. Although the United States does not square the circle on its statute of limitations defense, it does clearly raise, and thus does not waive, the defense. *See, e.g.*, U.S. Resp. at 5–6 (asserting "Harris's motion is untimely"). This claim is time-barred.

A federal prisoner has one year to file for post-conviction relief. But one year from what date? The controlling statute provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1)     the date on which the judgment of conviction becomes final;
>
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)     the date on which the facts supporting the claim or claims

17

presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Although the statute refers to a "motion," *see* § 2255(f), courts apply the limitations period on a claim-by-claim basis. *See Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012); *United States v. Battles*, 362 F.3d 1195, 1196–97 (9th Cir. 2004); *Davis v. United States*, 817 F.3d 319, 327–28 (7th Cir. 2016); *Capozzi v. United States*, 768 F.3d 32, 32–33 (1st Cir. 2014) (per curiam). Therefore, when a defendant brings two different claims in a § 2255 motion, one might be timely and one untimely.

Harris asserts that his motion is timely under § 2255(f)(3), because he filed it within one year of June 21, 2019, the date the Supreme Court issued its decision in *Rehaif*. Although the Court might agree, Harris's second claim does not rely on *Rehaif*. It does not appear to be based on any other new rule, *see* 2255(f)(3), as *Mavromatis* was issued in 2014. Harris does not contend that § 2255(f)(2) or (4) apply to Claim 2. Claim 2 is untimely because Harris did not file it within one year of the date his conviction became final. *See* 28 U.S.C. § 2255(d)(1).

Harris argues that the Court lacked jurisdiction to sentence him on both counts. *See* Harris Br. (Doc. 163) at 32–33. But the Court is not aware of any claim for relief, even lack of jurisdiction, that may be raised literally "at any time." 28 U.S.C. § 2255(a) expressly contemplates that some defendants will allege "that

18

the court was without jurisdiction to impose such sentence," yet § 2255(f) does not

exempt claims alleging lack of jurisdiction from the one-year limitations period.

*Cf., e.g., Madaio v. United States*, 397 Fed. Appx. 568, 569–70 (11th Cir. 2010)

(per curiam) (rejecting double jeopardy claim as untimely); *In re Wackerly*, No.

10-7062, 2010 WL 9531121 (10th Cir. Sept. 3, 2010) (declining to hear capital

habeas petitioner's allegation that State of Oklahoma lacked jurisdiction over

location where murder occurred).  Harris does not allege facts supporting equitable

tolling, *see Holland v. Florida*, 560 U.S. 631, 649 (2010), or "actual innocence,"

*see McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013); *House*, 547 U.S. at 538;

*Schlup*, 513 U.S. at 327.

Claim Two is dismissed with prejudice as time-barred.  The Court expresses

no opinion on the appropriate disposition of Counts 1 and/or 2 should any petition

to revoke supervise release be filed in future.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255

Proceedings.  A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of [the] constitutional claims" or "conclude the issues

19

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Ninth Circuit has addressed the case of a prisoner who sought leave to amend his first § 2255 motion to add a claim under *Rehaif, see Fierro*, No. 20-16058, 848 Fed. Appx. at 337–38, but it has not yet decided how *Rehaif* applies to first motions filed and decided in the district court under § 2255. As Harris has shown the United States did not prove all elements of the offense charged against him, *cf. Bousley*, 523 U.S. at 621, he makes a substantial showing that he was deprived of a constitutional right. He also makes a substantial showing that he was deprived of a constitutional protection against double jeopardy.

The Court will grant a COA on both claims.

Accordingly, IT IS ORDERED:

1. Harris's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 162) is DISMISSED WITH PREJUDICE.

2. A certificate of appealability is GRANTED as to both claims for relief. The clerk shall immediately process the appeal if Harris files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 19-105-BLG-SPW are terminated and shall close the civil file by entering

20

judgment in favor of the United States and against Harris.

DATED this ___4th___ day of August, 2021.

Susan P. Watters
Susan P. Watters
United States District Court